Fleetwood Grill, Inc. v. Commissioner. Michael F. Drinkhouse v. Commissioner.
Fleetwood Grill, Inc. v. Commissioner
Docket Nos. 41984, 41985.
United States Tax Court
T.C. Memo 1954-125; 1954 Tax Ct. Memo LEXIS 121; 13 T.C.M. (CCH) 793; T.C.M. (RIA) 54231; August 16, 1954, Filed *121 Ten thousand dollars in cash was deposited according to petitioner's instructions in the bank account of another and subsequently withdrawn. Held, the money belonged to petitioner and should be included in his income for 1945. Richard H. Tunstead, Esq., for the petitioners. Arthur L. Nims, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies as follows: Deficiency
Excess
Year
Income Tax
Profits Tax
Fleetwood Grill, Inc.
Fiscal 1946 *
$2,230.41
$613.09
Michael F. Drinkhouse
1945
6,552.04
These deficiencies arise principally because of a transaction occurring in December 1945 involving $10,000 which respondent originally charged as income to each petitioner. Other adjustments in the petitioners' income are not challenged. On brief, the respondent concedes that the $10,000 is not income to Fleetwood Grill, Inc.; therefore, it is unnecessary to discuss further any claims of the parties regarding Docket No. 41984, Fleetwood Grill, Inc. Effect will be given to this concession under Rule 50. It is contended, *122 however, that the $10,000 is income to Michael Drinkhouse in 1945, and that is the only question left for our determination. This case was tried in close relationship to Docket No. 41283, Lillian Lampel, [13 TCM 792], and the findings and opinion below should be read in conjunction with the findings in that case. Findings of Fact Michael F. Drinkhouse, the petitioner, is a resident of Mt. Kisco, New York. He filed his individual income tax return for the year 1945 with the collector of internal revenue for the second district of New York. During 1945, petitioner was principally engaged in the restaurant business in New York City. He owned the controlling interest in four corporations which operated restaurants in the city. Petitioner also invested in securities and real estate in 1945. In this year, petitioner maintained an office in the Lincoln Building, 60 East 42nd Street, New York City. He maintained a bank account in the Industrial Bank of Commerce (formerly known as The Morris Plan Industrial Bank) which was located nearby the Lincoln Building on 42nd Street. In September 1945 the petitioner persuaded Lillian Barkow (now Mrs. Lillian Lampel and referred *123 to hereinafter as Lillian) to conduct her banking at the Industrial Bank. Lillian was a distant cousin of petitioner's and she and petitioner had been acquainted for approximately 12 years at this time. Lillian manufactured inexpensive costume jewelry which she sold principally through concessions in various department stores. Prior to opening her account in the Industrial Bank, she maintained her account with the Manufacturers Trust Company. On December 4, 1945, petitioner visited Lillian in her apartment. He presented her with two checks drawn on The Morris Plan Industrial Bank. The checks were filled out in petitioner's handwriting, except for signature. One check was dated December 5 and the other December 6, 1945. Each was in the amount of $5,000 payable to "Cash." The petitioner asked Lillian to sign both checks. She protested claiming that she did not have sufficient money in the bank to cover them. She was also doubtful about the propriety of the petitioner's request. The petitioner assured her that the transaction was proper and that he had deposited money to cover the checks and that he needed the checks for some transaction in which he was involved. These statements *124 were made in the presence of a visitor, Bessie Cushenberry, who corroborated Lillian's recollection. Lillian signed both the checks as requested. On December 5 and again on December 6, 1945, petitioner gave his accountant, Harold Deitchman, $5,000 in cash and instructed Deitchman to deposit the money in Lillian's account in the Industrial Bank of Commerce. The money was in denominations ranging $1from to $50. Deitchman took the money in each instance, made out duplicate deposit slips, deposited the money in Lillian's account and returned a duplicate deposit slip to the petitioner. On December 8 the two checks signed by Lillian were paid by the Industrial Bank. The checks do not bear any teller's stamp, nor any endorsement or other identification of the person to whom they were paid. The usual practice of the bank was to require an endorsement when a check payable to cash was presented by other than the person on whose account the check was drawn. The $10,000 represented by the two checks did not appear on any of the books of the petitioner. The $10,000 was not reported on the petitioner's return for 1945. The $10,000 deposited in Lillian's account on December 5 and 6, 1945, *125 was petitioner's money and is income to him in the year 1945. Opinion ARUNDELL, Judge: We are dealing here with an item of $10,000 which respondent originally determined was taxable as income to each of three petitioners, Fleetwood Grill, Inc., Michael F. Drinkhouse and Lillian Lampel. The respondent concedes, on brief, the income is not taxable to the Fleetwood Grill. He now puts his emphasis on taxing petitioner Drinkhouse with the receipt of this $10,000 and only in the alternative does he argue that the income is taxable to petitioner Lillian Lampel. Petitioner Drinkhouse testified that the $10,000 was Lillian's money and Lillian testified in no uncertain terms that Drinkhouse was lying when he so testified and that the money was not hers but belonged to Drinkhouse. Other items of testimony were equally divergent and the testimony of the two principals can not be reconciled. From this conflicting record, however, two important points are established without contradiction. One is that the $10,000, when we first find it, was in the possession of Drinkhouse and it was Drinkhouse who gave this money to his accountant to deposit in Lillian's account in the bank. Five thousand *126 dollars in cash was deposited on December 5th and the second $5,000 on the following day. The money was in denominations ranging from $1 to $50. Another undisputed fact is that the two checks made payable to "Cash", which were used to withdraw the money from the bank a few days later, were made out by Drinkhouse in his own handwriting, although of course signed by Lillian. Her testimony, which is entirely corroborated by a disinterested witness, is to the effect that Drinkhouse came to Lillian's apartment on December 4, 1945, at a time when her friend, Bessie Cushenberry, was visiting with her, and brought with him the two checks already made out and asked Lillian to sign them, explaining that he had, without her knowledge, deposited $10,000 in her bank account and was by this means withdrawing it. At this time, Lillian had confidence in Drinkhouse and did as requested although she offered some protest to the transaction. One check was dated December 5 and the other December 6. As already stated, the deposit slips show that the first deposit of $5,000 was made on December 5 and the second on December 6. It would thus appear that at the time the checks were signed no deposit had yet *127 been made. Lillian insists that both checks were given to Drinkhouse at the time of signing and that she never received any of the money, although it is clear and without question that on December 8 the money was withdrawn from Lillian's account. Another strange thing in this extraordinary performance is that the checks bore no endorsement to show who received the money or even the usual teller's stamp to show which bank teller cashed the checks. There is no doubt that Drinkhouse was both a close business and personal friend of some of the principal officers of the bank and it was Drinkhouse who had prompted and influenced Lillian to change her bank account from the Manufacturers Trust Company, where she had maintained the account for a number of years, to the Industrial Bank some 90 days prior to the happening of these events. Lillian emphatically denies ever giving Drinkhouse any money to deposit for her and particularly the money with which we are concerned. In fact, it seems at least passing strange that Lillian, a business woman who was more or less making deposits daily in her own bank account and writing checks on that account, would be carrying around on her person such *128 large sums of money in currency rather than herself depositing the money if it was her desire to have it put in her bank account. Nor are we impressed too much by the testimony of an accountant that at a conference held by him with Drinkhouse and Lillian the former suggested that Lillian tell the revenue officers that the money came from the sale of jewelry which she had received by way of gift and that the money she received for the jewelry was in an amount substantially equal to the value of the jewelry when she received it. Under such circumstances, there would be little or no tax. From all the conflicting testimony, we must reach a conclusion. The Commissioner has found a deficiency against Drinkhouse based on the receipt by him of income in the sum of $10,000. In our opinion, the evidence given by and on behalf of Drinkhouse does not make a case to the contrary. On the whole record, unsatisfactory as it is, we have found that Drinkhouse received $10,000 of income that was not reported by him in his return. It follows that the deficiency determined by the respondent should be affirmed. Decisions will be entered under Rule 50. Footnotes
*. Ended October 31, 1946.↩